**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CLAUDIO D. & DALINDA ANDRADE,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:14-CV-3969-K** |
| | § | |
| **COUNTRYWIDE KB HOME LOANS,** | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SERVICES, INC.;** | § | |
| **G. TOMMY BASTIAN, et al.,** | § | |
| **RECONTRUST COMPANY, NA, BANK** | § | |
| **OF AMERICA, NA, COUNTRYWIDE** | § | |
| **HOME LOANS, INC., THE BANK OF** | § | |
| **NEW YORK MELLON, COLFIN AI-TX** | § | |
| **1, LLC, and DOES 1-X,** | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this pro se case was automatically referred for pretrial management.  Before the Court is *Bank Defendants' Motion to Dismiss Plaintiffs' Complaint and Brief in Support*, filed November 17, 2014 (doc. 5), and *Trustee Defendants' Motion to Dismiss*, filed December 15, 2014 (doc. 11).  Based on the relevant filings and applicable law, Bank Defendants' motion to dismiss should be **GRANTED in part and DENIED in part**, and the substitute trustee defendant's motion to dismiss should be **DENIED.**

## I.  BACKGROUND

This action involves the foreclosure of real property located at 1328 Acosta Street, Grand Prairie, Texas 75051 (the Property).  (doc. 1-1 at 5, 10.)  On or about July 18, 2006, Claudio D. and Dalinda Andrade (Plaintiffs) executed a note payable to Countrywide KB Home Loans in the original principal amount of $142,315.00, as well as a deed of trust that secured payment of the note.  (doc. 1-1 at 7, 22-29; doc. 1-2 at 1-9; doc. 5-2 at 2-4, 6-23.)  On July 25, 2011, Mortgage Electronic

Registration Systems, Inc. (MERS)[1] assigned all beneficial interest under the deed of trust, together with the note and the obligations under the note, to The Bank of New York Mellon f/k/a the Bank of New York (BNYM), as Trustee for the Certificateholders CWALT Inc., Alternative Loan Trust 2006-28CB, Mortgage Pass-Through Series 2006-28CB (the Trust) pursuant to an Assignment of the Deed of Trust (the Assignment).  (doc. 5-2 at 25.)

## A.    The Bankruptcy Litigation

On February 28, 2012, Plaintiffs filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code.  (doc. 5-2 at 27-34.)  They submitted their bankruptcy schedules that same day. (*Id*. at 35-58.)  Their Schedule A indicated that the Property was the only real property in which they had an interest.  (*Id*. at 37.)  In their Schedule B, they listed cash, bank accounts, household goods, books, pictures, "knick-knacks", clothing, jewelry, sports and photographic equipment, life insurance, a retirement and pension plan, and motor vehicles as their personal property.  (*Id*. at 38-42.)  Plaintiffs did not disclose any pending or potential claims against any of the defendants in their Schedule B, claiming not to have any property in the category of "[o]ther contingent and unliquidated claims... [such as] tax refunds, counterclaims..., and rights to setoff claims."  (*See id.* at 41.)   In their Schedule D, they listed Bank of America (BANA) as a secured creditor having a lien on the Property via a "first mortgage" and a "second mortgage." (*Id*. at 46.)  Plaintiffs also filed a statement of intention to surrender the Property.  (*Id*. at 67.)  On May 31, 2012, the bankruptcy court discharged Plaintiffs under Section 727 of Title 11 of the United States Code.  (*Id*. at 87-88.)

## B.    The Current Litigation

On August 28, 2014, Plaintiffs filed this *pro se* action against Countrywide KB Home

---

[1]MERS was incorrectly named in the suit as Mortgage Electronic Registration Services, Inc.  (*See doc*. 1-1 at 4.)

Loans[2], MERS, ReconTrust Company, N.A., BANA, Countrywide Home Loans, Inc., BNYM, the Trust[3] (collectively, the Bank Defendants), as well as Colfin AI-TX, LLC (Colfin), G. Tommy Bastian (Bastian), and "Does 1-X" in state court. (doc. 1-1.) Plaintiffs argue that the Trust is governed by a Pooling and Servicing Agreement (PSA) dated August 1, 2006, and a Prospectus Supplement (PS) to the PSA. (*Id.* at 8.) They contend that "Defendant CWALT, Inc. as the Depositor is governed by New York Trust Law pursuant to the PSA." (*Id.*) According to Plaintiffs, the assignment of the deed of trust to BNYM as trustee for the Trust occurred five years after the August 30, 2006 closing date of the Trust. (*Id.* at 10.) They argue that the transfer of the Assignment after the closing date is a violation of the PSA and New York trust law, and therefore the Assignment is void. (*Id.* at 14.) Additionally, they argue that the "Andrade Intangible Payment Obligation" and the note were not contemporaneously transferred to the Trust, and therefore the "Andrade Intangible Payment Obligation" was stripped from the note. (*Id.* at 8.) Further, the beneficial interest "securing the Andrade Intangible Payment Obligation" in the deed of trust "is no longer attached to the rights of the Andrade Intangible Payment Obligations." (*Id.* at 9.)

Plaintiffs also argue that the Assignment is void because the defendants failed to transfer the deed of trust into the Trust "within 30 days of signing" and to notify them of the transfer in violation of 15 U.S.C. § 1641(g). (*Id.* at 12.) Despite acknowledging that the Assignment was filed with the

---

[2]Bank Defendants note that Countrywide KB Home Loans, LLC has changed its name most recently to KBA Mortgage, LLC. (doc. 5 at 6.)

[3]Bank Defendants also note that the Trust is improperly identified as "CWALT, Inc." in the complaint. (doc. 5 at 6.) They additionally note that although the Trust is listed as a defendant in the body of the complaint, it is not listed as a defendant in the style of the complaint, and Plaintiffs have not requested citation and summons as to the Trust. (*Id.*) They contend that the Trust is not a properly named defendant because lawsuits against a trust must be brought against the trustee as its legal representative. (*Id.*) Out of an abundance of caution and without waiving any objection to the Trust's capacity to be sued, however, their counsel is making a special appearance on the Trust's behalf. (*Id.*)

Dallas County Clerk, they argue that the defendants violated several federal and Texas statutes by failing to record the Assignment with the "Dallas County Recorder." (*Id*. at 16, 17.)

Plaintiffs contend that an appointment of substitute trustee was executed by BNYM "substituting Recontrust Company, N.A. et al. as Trustee" for the deed of trust on January 8, 2013, and it was filed with the Dallas County Clerk on January 9, 2013. (*Id*. at 10.)  According to Plaintiffs, Defendants filed a notice of trustee's sale on January 11, 2013, and the Property was sold at a foreclosure sale on February 5, 2014. (*Id*.)

Plaintiffs filed a petition in state court to set aside the foreclosure sale on April 21, 2014. (*Id*.)  They contend that on or about June 17, 2014, Colfin filed a forcible entry and detainer action against them. (*Id*.)  They were forcibly evicted from the Property on or about August 13, 2014. (*Id*. at 11.)  Plaintiffs allege that the defendants did not have lawful authority to foreclose on the Property, and that as a consequence, Plaintiffs lost their Property in an "improper, illegal foreclosure sale." (*Id*. at 4, 13.)  Finally, they contend that the "claim for foreclosure" on their Property is barred by the statute of limitations. (*Id*. at 17.)

The complaint expressly asserts claims against the defendants for slander of title and fraud based on the alleged invalidity of the Assignment, as well as a declaratory judgment regarding various declarations based on the alleged invalidity of the Assignment and the defendants' lack of rights and interest in the note or deed of trust. (*Id*. at 13, 15-18.)  Liberally construed, the complaint also asserts a claim for wrongful foreclosure as well as a declaration that the defendants' right to foreclose on the Property is barred by the statute of limitations. (*See* doc. 1-1 at 4, 13, 17.)  In addition to declaratory relief, Plaintiffs only seek "any other relief this Court may find [j]ust and equitable." (*Id*. at 18.)

On November 10, 2014, Bastian filed an original answer and verified denial with the state

court.  (*See* doc. 1-3 at 18-20.)  His verified denial stated, "[i]t is [Bastian's] reasonable belief that he was named as a party in this litigation solely in his capacity as a Substitute Trustee under the Deed of Trust made the basis of this lawsuit, and that his only connection with this lawsuit is his appointment as Substitute Trustee under the terms of the Deed of Trust."  (*Id.*)  Plaintiffs did not respond to the verified denial.

On November 17, 2014, Bank Defendants moved to dismiss Plaintiffs' claims against them pursuant to Tex. R. Civ. P. 12(b)(1) and 12(b)(6).  (doc. 5.)  On December 15, 2014, Bastian moved to dismiss Plaintiffs' claims against him pursuant to Tex. Prop. Code § 51.007.  (doc. 11.)

## II.  BANK DEFENDANTS' MOTION TO DISMISS

Bank Defendants move for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). They argue that Plaintiffs lack standing to bring their claims, and that their claims are barred by judicial estoppel due to their failure to include them in the Chapter 7 bankruptcy case.  (doc. 5 at 7-15.)

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication."  *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth*, 422 U.S. at 517–18).  "The inquiry has two components: constitutional limits,[4] based on the case-and-controversy clause in Article III of the Constitution; and prudential limits,[5] crafted by the courts."

---

[4]  "To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision."  *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001)) (alteration in *St. Paul Fire & Marine Ins. Co.*).

[5]  Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the

*Id.* (citing *Raines v. Byrd,* 521 U.S. 811, 820 (1997)).  The principle that a Chapter 7 debtor lacks standing to pursue claims belonging to the bankruptcy estate implicates prudential standing.  *See St. Paul & Marine Ins. Co.*, 579 F.3d at 539, 544;  *In re Minerals Cont'l Inc.*, No. CIV.A. H-12-03099, 2013 WL 1352223, at *2 (S.D. Tex. Apr. 2, 2013).  "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795, n.2 (5th Cir. 2011).  Accordingly, Bank Defendants' motion is properly analyzed under Rule 12(b)(6).

## A.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A]

---

legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.  *St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs attached to their complaint a special warranty deed executed July 24, 2006, whereby KB Home Lone Star LP granted the Property to them as well as the deed of trust. (*See* doc. 1-1 at 20-29; doc. 1-2 at 1-9.) These documents are therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Bank Defendants attached to their motion to dismiss copies of the note, the deed of trust, the assignment of the deed of trust, and filings from Plaintiffs' bankruptcy action. (*See* doc. 5-2.) Plaintiffs' complaint refers to the note, the deed of trust, and the assignment, and therefore they are considered part of the pleadings. The deed of trust and the assignment are also a matter of public record, as are the bankruptcy filings, and they can be judicially noticed in considering a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201(b)(2)(a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"). Because the documents attached to Bank

8

Defendants' motion to dismiss are part of the pleadings or subject to judicial notice, conversion of their motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n.9.

**B.**   **Standing**

Bank Defendants first move to dismiss the complaint on grounds that Plaintiffs lack standing to assert their claims because "all potential claims and causes of action of Plaintiffs became the property of the bankruptcy estate, and the Chapter 7 trustee became the only party in interest withstanding to prosecute the claims." (doc. 5 at 13.)

**1.**   ***Real Party in Interest***

"In bankruptcy proceedings, standing is limited to parties in interest." *In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citation omitted). While the U.S. Bankruptcy Code does not define "party in interest", the Fifth Circuit has held that the term includes any creditor of the debtor "as well as any other person with a sufficient stake in [the] outcome of a [bankruptcy] proceeding so as to require representation." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C. V.*, 347 F.3d 589, 595 (5th Cir. 2003). The debtor, "being insolvent," has no stake in the outcome of the bankruptcy proceeding because he "has no interest in the manner of distribution of the assets of the estate among his creditors." *Grain Co. v. Walker Grain Co.*, 285 F. 156, 157 (5th Cir. 1922) (citation omitted).

Section 541(a) of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property" become property of the bankruptcy estate at the commencement of the bankruptcy case. 11 U.S.C.A. § 541(a) (West 2010); *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997). Courts have uniformly held that "the definition of property of the estate [under § 541(a)] is to be

interpreted broadly, and includes causes of action[6] existing at the time of the commencement of the bankruptcy action." *Drew v. Anderson*, 988 F.2d 1212, at *1 (5th Cir. 1993) (per curiam) (unpublished) (discussing the legislative history of § 541(a) and collecting cases); *In re Swift*, 198 B.R. 927, 930 (Bankr. W.D. Tex. 1996) ("It is settled law that the term 'all legal and equitable interests of the debtor in property' includes causes of action which have accrued as of the commencement of the case."). Notably, courts have also held that "[c]auses of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the bankruptcy estate." *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992), *aff'd sub nom. Lawrence v. Jackson Mack Sales*, 42 F.3d 642 (5th Cir. 1994) (collecting cases).

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished", and the appointed bankruptcy trustee becomes "the representative of the bankruptcy estate." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). As such, the trustee becomes "the real party in interest,[7] and the only party with standing to prosecute causes of action belonging to the estate." *Vineyard v. BAC Home Loan Servicing, LP*, No. A-10-CV-842-LY, 2011 WL 8363481, at *4 (W.D. Tex. Dec. 28, 2011) (citing *Kane*, 535 F.3d

---

[6] A "cause of action" "is an asset or a property right ... to which [a person] [is] entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him." *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 867 (5th Cir. 1971).

[7] Fed. R. Civ. P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Hatherly v. Mid-Continent Cas. Co.*, No. CIV.A. C-05-583, 2006 WL 1897266, at *2 (S.D. Tex. July 10, 2006) (citing *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)). Accordingly, the claim that a debtor lacks standing to sue in this context presents the question of whether her "claims are being prosecuted by a party other than the real party in interest pursuant to" Rule 17(a). *Bath v. HSBC*, No. 12-CV-01929-RBJ-KMT, 2013 WL 3296613, at *1 (D. Colo. May 30, 2013); *accord Transload & Transp., Inc. v. Am. Marine Underwriters, Inc.*, 94 B.R. 416, 419 (E.D. La. 1988) (explaining that because the debtor's "cause of action" "became part of the debtor's estate when [the] bankruptcy proceedings were filed," the bankruptcy trustee was the "only real party in interest" and "the proper party plaintiff to bring suit [t]herein" under Rule 17(a)).

at 385 and 11 U.S.C. §§ 323, 541(a)(1)).  Unless a cause of action is either "abandoned"[8] by the

trustee "or administered in accordance with the Code," it remains property of the bankruptcy estate

and "the debtor has no standing to pursue [it]," even after her debts are discharged and her case is

closed.  *See Drew*, 988 F.2d at *2; *see also* 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not

abandoned ... and that is not administered in the case remains property of the estate.").

In this case, Plaintiffs filed their Chapter 7 voluntary bankruptcy petition on February 28,

2012. (doc. 5-2 at 28-34.)  As of that date, the Property (the only "real property" in which they had

an ownership interest listed on their Schedule A) became property of the bankruptcy estate, and all

of their rights in it were extinguished.  *See Kane*, 535 F.3d at 385; *see also* 11 U.S.C. § 541(a).

According to Plaintiffs' complaint, all of their claims against Bank Defendants in this case arise

from the Assignment that occurred before February 28, 2012, except for their liberally construed

wrongful foreclosure claim to the extent it is based on the February 2014 foreclosure, and their

request for a declaration that the foreclosure is barred by limitations. (*See* doc.1-4 at 10-17.)

Because the claims based on the Assignment (the Assignment Claims) "accrued" before February

28, 2012, they also became property of the bankruptcy estate as of that date, even though Plaintiffs

had not yet filed this action.  *See* 11 U.S.C. § 541(a); *Swift*, 198 B.R. at 930; *Lawrence*, 837 F. Supp.

at 779.  Given their failure to allege or bring forth any facts showing that the bankruptcy trustee

abandoned the Assignment claims, they fail to raise a reasonable inference that they are the real

party in interest and have standing to pursue them.  *See Vineyard*, 2011 WL 8363481, at *5 (holding

---

[8]  "[U]pon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate .... Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed."  *Kane*, 535 F.3d at 385. This requires affirmative action or "a clear manifestation of the trustee to abandon the claim."  *Dallas Cabana, Inc.*, 441 F.2d at 867–68; *see also* 11 U.S.C. § 554(a) (requiring "[a] notice and a hearing" for the trustee to "abandon any property of the estate").  Abandonment may even require an order "or some other disposition" by the bankruptcy court.  *See Dallas Cabana, Inc.*, 441 F.2d at 868.

that the debtor's claims against the mortgagee arising from a foreclosure "fail[ed] as a matter of law" because they "belong[ed] to the bankruptcy estate, not [him]," and "[u]nless and until the trustee formally abandon[ed]" the claims, the trustee was "the proper party to prosecute [them]"); *see also Drew*, 988 F.2d at *2 (to same effect).  Plaintiffs' lack of standing is not affected by the bankruptcy court's May 31, 2013 order discharging their debts and closing their case because the claims remain part of the bankruptcy estate.  *See* 11 U.S.C. § 554(d); *see also Drew*, 988 F.2d at *2.

### 2.        *Joinder/Substitution*

Where "a court concludes that a debtor lacks standing to pursue claims in an action because he is not a real party in interest, the court may allow the bankruptcy trustee to be joined or substituted as [the] plaintiff" before dismissing the action.  *See Hatherly*, 2006 WL 1897266, at *2. Under Rule 17(a)(3), a court may not dismiss an action "for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. Rule Civ. P. 17(a)(3).  Accordingly, the bankruptcy trustee should be allowed a reasonable time to ratify, join, be substituted, or take other action with respect to the Assignment Claims.  *See id.*; *see also Bauer v. Dean Morris, L.L.P.*, No. CIV.A. 08-5013, 2011 WL 1303814, at *6 (E.D. La. Mar. 30, 2011) (allowing the bankruptcy trustee time "to determine whether to move to substitute himself in place of [the plaintiff] as the plaintiff in [the] matter" before dismissing the plaintiff's claims on lack of standing grounds).  If the bankruptcy trustee does not intervene within the 14 days allowed for filing objections to the recommendation, or a deadline otherwise set by the Court, Plaintiffs' Assignment Claims should be dismissed with prejudice for failure to state a claim as they relate to them individually and for failure

to prosecute in the name of the real party in interest as they relate to the bankruptcy estate.[9]

## C.      <u>Judicial Estoppel</u>

Bank Defendants also move to dismiss Plaintiffs' complaint on grounds that they are judicially estopped from asserting their claims because they failed to disclose their claims in their bankruptcy filings.  (doc. 5 at 14.)

"Judicial estoppel is an affirmative defense."  *Abreu v. Zale Corp.*, No. 3:12-CV-2620-D, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (Fitzwater, C.J.) (citations omitted).  Although affirmative defenses are generally not appropriate grounds on which to dismiss a claim under a Rule 12(b)(6) motion, the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).  Here, because the elements of judicial estoppel appear on the face of Plaintiffs' complaint and in court filings that are subject to judicial notice, this affirmative defense may be properly considered for purposes of Bank Defendants' motion to dismiss.  *See id.*; *see also Abreu*, 2013 WL 1949845, at *1 (considering judicial estoppel in the context of a motion for judgment on the pleadings under Rule 12(c), which utilizes the same standard "as the one for deciding a motion to dismiss under Rule 12(b)(6)").  As with any affirmative defense, "[t]he burden to prove judicial estoppel is on the party invoking the

---

[9]  "[M]ost courts have interpreted [section 3] of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Wieburg*, 272 F.3d at 308.  Nevertheless, in *Wieburg*, considering that the statute of limitations for the plaintiff's claims had run, and pointing to "Rule 17(a)'s purpose of preventing forfeitures," the Fifth Circuit held that "it was an abuse of discretion for the district court to dismiss the action without explaining why the less drastic alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were inappropriate." *Id.* at 309.  Because it appears based on Plaintiffs' pleadings that the events giving rise to the Assignment Claims occurred before they filed the first lawsuit in August 2014, the bankruptcy trustee should be allowed the opportunity to intervene or take appropriate action to avoid any forfeiture due to the applicable statutes of limitations.  *See Wieburg*, 272 F.3d at 309.

doctrine." *See Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 WL 7089989, at *2 (S.D. Miss. May 31, 2006) (citing *Smith v. United States*, 328 F.3d 760, 765 (5th Cir. 2003)).

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc) (citation omitted).  Its purpose "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Kane*, 535 F.3d at 385 (citation and internal quotation marks omitted). The doctrine "applies when (1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently." *Abreu*, 2013 WL 1949845, at *2; *accord Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

## 1.    *Inconsistent Positions*

In relation to the first element, "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999)) (emphasis in *Coastal Plains*); *see also* 11 U.S.C. § 521(a)(1).  The duty to disclose continues even after the debtor is discharged and her bankruptcy case is closed. *See Superior Crewboats*, 374 F.3d at 335; *see also* 11 U.S.C. § 350(b) (providing for a "case [to] be reopened ... to administer assets, to accord relief to the debtor, or for other cause").  "By omitting a claim or potential claim from the applicable bankruptcy schedule(s), a debtor represents to the bankruptcy court that the claim does not exist." *Thompson*, 2006 WL 7089989, at *3 (citation omitted).  Accordingly, "if a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then

14

element one of the test for judicial estoppel is met." *Id.*

Here, judicially noticed public records reflect that Plaintiffs listed cash, bank accounts, household goods, books, pictures, "knick-knacks", clothing, jewelry, sports and photographic equipment, life insurance, a retirement and pension plan, and motor vehicles as their personal property in their Schedule B.  (*See* doc. 5-2 at 38-42.)   Although their claims based on the Assignment accrued before they filed for bankruptcy, they did not list them in their Schedule B, as they were required to do by 11 U.S.C. § 521(a)(1).  (*Id.*)  Instead, they indicated that they had no personal property under the category of "contingent and unliquidated claims." (*See id.* at 41.)  With their nondisclosure, they informed the bankruptcy court that they had no pending or potential claims. *See Thompson*, 2006 WL 7089989, at *3.  Because their current suit is "plainly inconsistent" with their position in their Schedule B, the first element of judicial estoppel is satisfied.  *See, e.g.*, *Abreu*, 2013 WL 1949845, at *2 (holding that the plaintiff's failure to list her claim against her former employer for "unpaid overtime" in her schedule B was "plainly inconsistent" with her subsequent action involving that claim).

### 2.    *The Bankruptcy Court's Adoption of Plaintiffs' Previous Position*

As for the second element of judicial estoppel, the Fifth Circuit has explained that "[a]doption does not require a formal judgment"; rather, it requires only that the first court "adopt[] the position urged by the party, either as a preliminary matter or as part of a final disposition." *Superior Crewboats*, 374 F.3d at 335 (quotation omitted).  Consequently, courts have held that a bankruptcy court adopts a debtor's position when it issues a discharge under Section 727 of Title 11 of the United States Bankruptcy Code.  *See Acuna v. Connecticut General Life Ins. Co.*, 560 F. Supp.2d 548, 554 (E.D. Tex. 2008)("The Bankruptcy Court adopted the Plaintiff's position by issuing its discharge."); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001)

("[A] discharge of debt by a bankruptcy court...is sufficient acceptance to provide a basis for judicial

estoppel, even if the discharge is later vacated."); *see also Superior Crewboats*, 374 F.3d at 335;

*Bauer v. Dean Morris, L.L.P.,* No. CIV.A. 08-5013, 2011 WL 1303814, at *5 (E.D.La Mar. 30,

2011)("Implicit in the [bankruptcy court's] order that unsecured creditors would be paid nothing

[was] the bankruptcy judge's acceptance of [the] plaintiff's representations in the bankruptcy

schedules ... that she had no contingent assets.").

Here, the second element is satisfied because the bankruptcy court's discharge of Plaintiffs

was "sufficient acceptance to provide a basis of judicial estoppel." *See Hamilton*, 270 F.3d at 784.

### 3.   *Plaintiffs' Inadvertence*

As to the third element, the Fifth Circuit has held that in "bankruptcy cases, the debtor's

failure to satisfy [her] statutory disclosure duty is 'inadvertent' only when, in general, the debtor

either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love v.

Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Coastal Plains*, 179 F.3d at 210).

### a.   Plaintiffs' Knowledge of Their Claims

"A plaintiff has knowledge of a claim whenever she knows the facts that give rise to the

claim." *Abreu*, 2013 WL 1949845, at *3 (citing *Jethroe*, 412 F.3d at 601).  Notably, the debtor's

"awareness of [her] statutory disclosure duty is ... not relevant to the question of judicial estoppel";

all that matters is her awareness "of the facts giving rise to her claim." *Kamont v. West*, 83 Fed.

App'x 1, 3 (5th Cir. 2003) (per curiam).  Neither does the "debtor need not know all the facts or

even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to

[the bankruptcy court's] confirmation to suggest that [she] may have a possible cause of action, then

that is a 'known' cause of action such that it must be disclosed." *Thompson*, 2006 WL 7089989, at

*3 (citations omitted).

Here, Plaintiffs allege that the Assignment was invalid and void because it occurred after the closing date of the Trust, because it was not recorded, and because it stripped the "Andrade Intangible Payment Obligation" from the note and deed of trust.  (doc. 1-1 at 9, 10,12, 16.)  As the Assignment occurred and was filed in July of 2011, Plaintiffs were aware of the facts giving rise to their claims before they filed for bankruptcy on February 28, 2012. They had "knowledge" of their claims before that date for purposes of judicial estoppel.  *See Superior Crewboats*, 374 F.3d at 335; *Kamont*, 83 Fed. App'x at 3.

Even assuming for purposes of Bank Defendants' motion that  Plaintiffs did not know about their Assignment claims until after the bankruptcy closed, they could have fulfilled their on-going obligation to disclose their pending claims by seeking to re-open their bankruptcy case and amending their Schedule B.  *See Abreu*, 2013 WL 1949845, at *3 (explaining that the plaintiff "undoubtedly had knowledge of [her] claim after she filed [her] suit, yet she failed to amend her bankruptcy plan, despite [her] ongoing obligation to do so"); *see also* 11 U.S.C. §§ 350(b)11, 521(a)(1).  They do not allege, and the public records do not reflect, that they sought to re-open the bankruptcy case.  The "knowledge" sub-element of the "inadvertence" test is therefore satisfied.

b.    Plaintiffs' Motive to Conceal Their Claims

The Fifth Circuit has stated that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court.  Motivation in this context is self-evident because of [the] potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262 (quoting with approval *Thompson*, 2006 WL 7089989, at *4).  In *Love*, the Fifth Circuit noted that "whether a debtor's failure to disclose claims was inadvertent presents a question of fact." Citing *Superior Crewboats*, it reaffirmed its finding "that [the] debtors had a motivation to conceal" their claims because "they stood to 'reap a windfall had they been able to recover on the undisclosed

17

claim without having disclosed it to the creditors.'" *Id.* (citing *Superior Crewboats*, 374 F.3d at 336).

In *Superior Crewboats*, the plaintiffs filed a personal injury suit against a maritime company "while their bankruptcy case was still pending."  *Superior Crewboats*, 374 F.3d at 333.   They informed the bankruptcy trustee about their claim but incorrectly stated that it was barred by the statute of limitations; the trustee abandoned the claim as a consequence.  *Id.*  Although the plaintiffs later sought to "re-open the bankruptcy proceeding and amend their petition" to account for the actually viable claim, the Fifth Circuit denied leave after finding that they had the "requisite motivation to conceal the claim" at the time they filed their lawsuit. *Id.* at 335–36.  The Fifth Circuit reversed the district court's denial of the maritime company's motion to dismiss, holding "that judicial estoppel bar[red] the [plaintiffs'] personal injury suit as a matter of law."  *Id.* at 336.

Noting the apparent tension between *Love*, which involved a summary judgment motion, and *Superior Crewboats,* which was decided in the context of Rule 12(b)(6), the Fifth Circuit explained in *Abreu* that "[i]f inadvertence is a fact issue, it is unclear how *Superior Crewboats* could have reversed the district court's denial of a Rule 12(b)(6) motion based on judicial estoppel in the absence of the plaintiff[s'] pleadings or judicially-noticed documents that clearly showed [their] subjective intent."  *Abreu*, 2013 WL 1949845, at *5.  Relying on *Superior Crewboats*, and noting that "it controls over *Love* to the extent they are inconsistent,"[10] the Fifth Circuit held that the defendant employer "ha[d] established the [motive] [sub-element] of judicial estoppel" "based on [the plaintiff's] complaint and documents that the court [could] judicially notice" because the plaintiff "would have reaped a windfall had she been able to recover on her claim without disclosing

---

[10] In the Fifth Circuit, if "two panel decisions are in conflict, the earlier opinion controls."  *Abreu*, 2013 WL 1949845, at *5 n. 3 (citing *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009); *see also In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991) (explaining that "[i]n this Circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court").

it to the bankruptcy court." *Id.* at *4–5. Also relying on *Superior Crewboats*, the Fifth Circuit likewise held in *Thompson* that the defendant had established the plaintiff's "motive to conceal" sub-element for purposes of its motion to dismiss because the plaintiff "clearly would have benefitted from omitting [his] discrimination claim from [his] Schedule B" by "receiv[ing] the fruits of [the] claim" at the expense of his creditors. *Thompson*, 2006 WL 7089989, at *5–6.

Here, the bankruptcy court discharged Plaintiffs' debts. (doc. 5-2 at 87.) Part of the relief they now seek is a declaration that they are the owners of the Property and that none of the defendants in the case have a lawful claim to the note or deed of trust. (doc. 1-1 at 18.) They would "reap a windfall" if they prevailed in their suit and obtained relief without having accounted for it in their bankruptcy case. Accordingly, Bank Defendants have established the "motive to conceal" sub-element of the inadvertence test based on Plaintiffs' own pleadings and the filings attached to their motion to dismiss. *See Abreu*, 2013 WL 1949845, at *5; *Thompson*, 2006 WL 7089989, at *5–6.

In conclusion, Bank Defendants have met their burden to establish the affirmative defense of judicial estoppel. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" "to protect the integrity of the judicial process." *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). "Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice," and its application "should be guided by a sense of fairness, with the facts of the particular dispute in mind." *Abreu*, 2013 WL 1949845, at *5 (citing *Reed,* 650 F.3d at 574). Its application " is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600; *Kane*, 535 F.3d at 386. The doctrine "must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their

19

assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to

an equitable distribution of the assets of the debtor's estate." *Reed*, 650 F.3d at 574.  Allowing

plaintiffs to proceed with previously undisclosed claims would produce the inequitable result of

permitting "debtors to '[c]onceal their claims; get rid of [their] creditors on the cheap, and start over

with a bundle of rights.'" *Superior Crewboats*, 374 F.3d at 336 (quoting *Payless Wholesale Distrib.,

Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)) (alterations in *Superior

Crewboats*).   This would be the result in this case if Plaintiffs were to recover against Bank

Defendants at the expense of their creditors whose claims were discharged in their bankruptcy

action.   Accordingly, Bank Defendants' motion to dismiss should be granted as to the Assignment

Claims, and the Assignment Claims should be dismissed for failure to state a claim as they relate

to Plaintiffs individually.

### D.   Claims Based the February 5, 2014 Foreclosure Sale of the Property

As noted, Plaintiff's complaint can be liberally construed as asserting a wrongful foreclosure

claim and as seeking a declaration that the February 2014 foreclosure sale was barred by the statute

of limitations.   Their claims based on the February 2014 foreclosure sale are not precluded because

the foreclosure sale occurred after the debtor was discharged, and after the bankruptcy proceeding

was closed on May 31, 2012.  (*See* doc. 5-2 at 87.)

Bank Defendants argue that to the extent Plaintiffs intend to assert a wrongful foreclosure

claim, they fail to state a cognizable claim for relief because they fail to allege facts relating to a

defect in the sale proceedings, a grossly inadequate sales price, or a causal connection between  the

defect and inadequate price.  (doc. 5 at 26.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud,

and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex.

20

2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, Plaintiffs allege that the defendants did not have lawful authority to foreclose on the Property, and that as a consequence of their actions or inaction, they lost their Property in an "improper, illegal foreclosure sale."  (*Id*. at 4, 13.)  It appears that their allegations regarding the foreclosure are based on their Assignment allegations.  If so, those allegations would be subject to dismissal as to them individually due to their failure to assert them in the bankruptcy proceeding.  However, to the extent they are not based on the allegations regarding the Assignment, they still fail because Plaintiffs fail to allege that the Property was sold for a grossly inadequate price, or that there was a causal connection between any defects in the foreclosure sale proceedings and any

grossly inadequate selling price.  Therefore, to the extent they intend to bring a wrongful foreclosure claim that is not based on the Assignment, it should be dismissed for failure to state a claim.  *Pollet v. Aurora Loan Servs.,* 455 Fed. App'x 413, 415 (5th Cir. 2011)( affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege (1) that his home sold for a grossly inadequate selling price and (2) a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price"); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d at 766; *Garcia v. Bank of New York Mellon*, 2012 WL 692099, at *2 (N.D.Tex. Mar. 5, 2012).[11]

## E.    New Allegations

Plaintiffs' response to Bank Defendants' motion to dismiss asserts a myriad of new allegations that were not asserted in their complaint.[12]  (*See* doc. 9.)  Beginning with the section entitled "Argument," the response appears to be a "cut and paste" from another case or document that does not fit here.  (*See* doc. 9 at 8-16.)  However, even if liberally construed as an amendment to their complaint,[13] Plaintiffs' allegations fail to state a claim for relief because they are based on

---

[11]Bank Defendants do not move to dismiss Plaintiffs' request for a declaration that the February 2014 foreclosure sale is barred by the statute of limitations.  Because that claim is based on the foreclosure sale, it remains pending.

[12]In their response, Plaintiffs argue that the Court does not have subject matter jurisdiction in this case based on a lack of diversity and their failure to specify a dollar amount as part of their action.  (*See* doc. 9 at 13-14.) To the extent Plaintiffs seek remand of this case to state court, they must file a motion that complies with the Local Civil Rule 7 of the Local Civil Rules for the Northern District of Texas.

[13]Plaintiffs' new allegations in their response are not part of the pleadings to be considered for purposes of the motion to dismiss.  *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *see also Cutrera v. Board of Supervisors,* 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990).  They have not sought or been granted leave to amend their complaint to add these allegations, and they have not shown that Bank Defendants consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2).  Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend their complaint.  *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

the Assignment.  As noted, any claims based on the Assignment belong to the bankruptcy estate.

Therefore, to the extent any new claims are asserted in their response, they are also subject to

dismissal for failure to state a claim as to Plaintiffs individually.  As with the Assignment Claims,

if the trustee does not intervene within the 14 days allowed for filing objections to the

recommendation, or a deadline otherwise set by the Court, any new claims based on the Assignment

should be dismissed with prejudice for failure to state a claim as they relate to Plaintiffs individually

and for failure to prosecute in the name of the real party in interest as they relate to the bankruptcy

estate.

**F.      Opportunity to Amend**

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

*se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D,

2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal.  *See*

*Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex.

Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an

action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to

a motion to dismiss after being specifically invited to do so by the court, the defendant has

specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the

complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs have not amended their complaint since filing this action. It does not appear that they have alleged their best case to the Court with respect to the wrongful foreclosure claim, and they should therefore be accorded an opportunity to amend the complaint to sufficiently state a claim for relief, as to them individually, against Bank Defendants.

### III.  SUBSTITUTE TRUSTEE'S MOTION TO DISMISS

Bastian seeks to dismiss Plaintiffs' claims against him pursuant to Tex. Prop. Code 51.007(a).  (doc. 11.)

Pursuant to Section 51.007 of the Texas Property Code,

The trustee named in a suit or proceeding may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument.

Tex. Prop. Code 51.007(a).

Once the trustee's verified denial is filed, all parties to the suit have 30 days to file a verified response that rebuts the trustee's verified denial. *Id*. at 51.007(b). If a party fails to timely file a response, the trustee shall be dismissed from the suit without prejudice. *Id*. at 51.007(c). Although this state rule is procedural in nature, district courts in the Fifth Circuit have dismissed a trustee named in a deed of trust or other security instrument who has followed the procedures outlined in Section 51.007 and where the other party failed to file a verified response. *See Mahlin v. GMAC Mortg. LLC*, 2013 WL 6153285, at *5 (N.D.Tex. Nov. 22, 2013); *Lewis v. GMAC Mortg., LLC*, No. 1:12-cv-129, 2012 WL 3647425, at *1 (E.D. Tex. July 18, 2012), *rec. adopted*, 1:12-cv-129, 2012

24

WL 3647410 (E.D. Tex. Aug. 22, 2012) (noting that district courts in the Fifth Circuit have not treated this section of the Texas Property Code as an inapplicable state procedural rule); *Vanderbuilt Mort. & Fin., Inc. v. Flores*, 2010 WL 3521727, at \*3 (S.D.Tex. Sept. 8, 2010)(finding "Texas district courts have not treated Section 51.007 as a state procedural rule that does not apply in federal courts").

Here, Bastian filed a verified denial on November 10, 2014 stating that it was his reasonable belief that he was named as a party solely in his capacity as a substitute trustee, and his only connection with the lawsuit is his appointment as the substitute trustee under the deed of trust. (*See* doc. 1-3 at 18-19.) His verified answer does not specify the basis for his reasonable belief that he was named solely in his capacity as the substitute trustee as required by subsection (a) of Section 51.007. (*See id.*) It merely asserts that he has such a reasonable belief, and that he has a reasonable belief that his only connection with the lawsuit is his appointment as substitute trustee. (*See id.*) Accordingly, he has failed to comply with the procedure outlined in § 51.007(a), and his dismissal is not warranted even though Plaintiffs failed to provide a verified response. *See Marsh v. Wells Fargo Bank, N.A.*, 760 F.Supp.2d 701, 707 (N.D.Tex. 2011)(holding the substitute trustee's verified denial that failed to state the basis of the his reasonable belief was not proper and did not warrant his dismissal under § 51.007); *Pickens v. U.S. Bank Nat. Ass'n*, No. 3:12-cv-2210, 2013 WL 866171, at \*4 (N.D.Tex. Jan. 8, 2013), *rec. adopted*, 2013 WL 869958 (N.D.Tex. Mar. 8, 2013)(holding the provisions of § 51.007 did not apply and the substitute trustee could not be dismissed where the substitute trustee's verified answer did not specify the basis for his reasonable belief that he was named solely in his capacity as trustee in compliance with § 51.007 (a)).

Bastian's motion to dismiss Plaintiffs' claims against him without prejudice under §

51.007(c) should be denied.

## IV.  RECOMMENDATION

If the bankruptcy trustee intervenes in the action within the 14 days allowed for filing objections to the recommendation, or a deadline otherwise set by the Court, Bank Defendants' motion to dismiss should be **GRANTED in part**, and all of the Assignment Claims[14] as they relate to Plaintiffs individually should be **DISMISSED** with prejudice.  However, the Assignment Claims should be allowed to proceed as they relate to the bankruptcy estate.  If the bankruptcy trustee does not intervene, however, Bank Defendants' motion to dismiss should be **GRANTED in part**, and the Assignment Claims as they relate both to Plaintiffs individually and to the bankruptcy estate should be **DISMISSED with prejudice**.

If Plaintiffs do not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Bank Defendants' motion to dismiss Plaintiffs' wrongful foreclosure claim should be **GRANTED**, and Plaintiffs' wrongful foreclosure claim against Bank Defendants should be **DISMISSED with prejudice.**  Plaintiffs' request for a declaration that the foreclosure sale is barred by the statute of limitations should be allowed to proceed to trial as to Plaintiffs individually.  If Plaintiffs timely file an amended complaint, however, Bank Defendants' motion to dismiss as to the wrongful foreclosure claim should be **DENIED as moot**.

Bastian's motion to dismiss Plaintiffs' claims against him should be **DENIED**.

---

[14]Assignment Claims also includes any new claims alleged in the response that are based on the Assignment.

26

**SO RECOMMENDED** on this 13th day of July, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE