IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAUDIO D. & DALINDA ANDRADE, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3969-K |
| | § | |
| COUNTRYWIDE KB HOME LOANS, | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SERVICES, INC.; | § | |
| G. TOMMY BASTIAN, et al., | § | |
| RECONTRUST COMPANY, NA, BANK | § | |
| OF AMERICA, NA, COUNTRYWIDE | § | |
| HOME LOANS, INC., THE BANK OF | § | |
| NEW YORK MELLON, COLFIN AI-TX | § | |
| 1, LLC, and DOES 1-X, | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this *pro se* case was automatically referred for pretrial management. Before the Court is *Bank Defendants' Motion to Strike or Dismiss Plaintiffs' August 5, 2015 Amended Complaint and Brief in Support*, filed August 19, 2015 (doc. 25). Based on the relevant filings and applicable law, the motion to strike should be **DENIED**, and the motion to dismiss should be **GRANTED**.

## I. BACKGROUND

This action involves the foreclosure of real property located at 1328 Acosta Street, Grand Prairie, Texas 75051 (the Property). (doc. 1-1 at 5, 10.) On or about July 18, 2006, Claudio D. and Dalinda Andrade (Plaintiffs) executed a note payable to Countrywide KB Home Loans in the original principal amount of $142,315.00, as well as a deed of trust that secured payment of the note. (doc. 23 at 19-38; 25-2 at 2-4, 6-23.) The deed of trust provided that Mortgage Electronic

Registration Systems, Inc. (MERS)[1] was a beneficiary under the deed of trust and acted solely as nominee for the Lender and Lender's successors and assigns. (doc. 23 at 23-24; doc. 25-2 at 7-8.) MERS had the right to exercise any and all of those interests, including the right to foreclose and sell the Property and to release and cancel the deed of trust. (doc. 23 at 24; doc. 25-2 at 8.) On July 25, 2011, MERS assigned all beneficial interest under the deed of trust, together with the note and the obligations under the note, to The Bank of New York Mellon f/k/a the Bank of New York (BNYM), as Trustee for the Certificateholders CWALT Inc., Alternative Loan Trust 2006-28CB, Mortgage Pass-Through Series 2006-28CB (CWALT) pursuant to an Assignment of the Deed of Trust filed on July 27, 2011 (the Assignment). (doc. 23 at 108-109; doc. 25-2 at 25-26.)

A.    **The Bankruptcy Litigation**

On February 28, 2012, Plaintiffs filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. (doc. 25-2 at 28.) They submitted their bankruptcy schedules that same day. (*Id.* at 57.) Their Schedule A noted that the Property was the only real property in which they had an interest. (*Id.* at 37.) In their Schedule B, Plaintiffs listed cash, bank accounts, household goods, books, pictures, "knick-knacks", clothing, jewelry, sports and photographic equipment, life insurance, a retirement and pension plan, and motor vehicles, as their personal property. (*Id.* at 38-42.) They did not disclose any pending or potential claims against any of the defendants in their Schedule B, claiming not to have any property in the category of "[o]ther contingent and unliquidated claims... [such as] tax refunds, counterclaims..., and rights to setoff claims." (*See id.* at 41.) In their Schedule D, they listed Bank of America (BANA) as a secured creditor having a lien on the Property via a "first mortgage" and a "second mortgage." (*Id.* at 46.) Plaintiffs also filed

---

[1]MERS was incorrectly named in the suit as Mortgage Electronic Registration Services, Inc. (*See doc.* 1-1 at 4.)

a statement of intention to surrender the Property.  (*Id*. at 67.)  On May 31, 2012, the bankruptcy court discharged Plaintiffs under Section 727 of Title 11 of the United States Code.  (*Id*. at 87-88.)

## B.    The Current Litigation

On August 28, 2014, Plaintiffs filed this *pro se* action against Countrywide KB Home Loans (KBA)[2], MERS, ReconTrust Company, N.A. (ReconTrust), BANA, Countrywide Home Loans, Inc., BNYM, CWALT, as well as Colfin AI-TX, LLC[3], G. Tommy Bastian[4], and "Does 1-X" in state court.  (doc. 1-1.)  In their state court petition, they argued that the Assignment was transferred to CWALT after CWALT's closing date, and the Assignment was therefore void.  (*Id*. at 10, 14.)  They also argued that the Assignment was void because the defendants failed to transfer the deed of trust into CWALT "within 30 days of signing" and to notify them of the transfer in violation of 15 U.S.C. § 1641(g).  (*Id*. at 12.)  Plaintiffs also contended that the defendants did not have lawful authority to foreclose on the Property, and that as a consequence, they lost it in an "improper, illegal foreclosure sale."  (*Id*. at 4, 13.)  Finally, they contended that the "claim for foreclosure" on their Property was barred by the statute of limitations.  (*Id*. at 17.)  The petition expressly asserted claims against the defendants for slander of title and fraud based on the alleged invalidity of the Assignment, as well as a declaratory judgment regarding various declarations based on the alleged invalidity of the Assignment and the defendants' lack of rights and interest in the note or deed of trust.  (*Id*. at 13, 15-18.)  Liberally construed, the petition also asserted a claim for wrongful foreclosure as well as a declaration that the defendants' right to foreclose on the Property was barred by the statute of

---

[2]Defendants note that Countrywide KB Home Loans, LLC has changed its name to KBA Mortgage, LLC. (doc. 25 at 8.)

[3]Colfin AI-TX, LLC was dismissed from this lawsuit on September 10, 2015.  (doc. 31.)

[4] G. Tommy Bastain was dismissed from this lawsuit on September 1, 2015.  (doc. 28.)

limitations.  (*See* doc. 1-1 at 4,13,17.)

On July 13, 2015, it was recommended that all the claims based on the Assignment, as they related to Plaintiffs individually, should be dismissed with prejudice.  (doc. 18 at 26.)  Because it was found that those claims belonged to the bankruptcy estate, it was recommended that the bankruptcy trustee be allowed to intervene in the action, and if he did not, that the claims be dismissed against the bankruptcy estate with prejudice.  (doc. 18 at 26.)  It was also recommended that Plaintiffs be allowed to amend their complaint to sufficiently state a claim for relief, as to them individually, because it did not appear that they had alleged their best case with respect to the wrongful foreclosure claim.  (*Id*.)  It was recommended that Plaintiffs' wrongful foreclosure claim be dismissed with prejudice if Plaintiffs did not file an amended complaint within the 14 days allowed for filing objections.  (*Id*.)  Additionally, it was recommended that Plaintiffs' request for a declaration that the foreclosure sale was barred by the statute of limitations be allowed to proceed to trial as to Plaintiffs individually.  (*Id*.)

On July 27, 2015, the bankruptcy trustee declined to intervene in the action.  (doc. 21.)

After being granted additional time, Plaintiffs filed their amended complaint on August 5, 2015 against KBA, MERS, BANA, ReconTrust, Countrywide Home Loans, Inc., BNYM, and Countrywide Alternative Loan Trust 2006-28CB[5] (the Trust) (collectively, along with Certificateholders CWALT Inc., Alternative Loan Trust 2006-28CB, Mortgage Pass-Through Series

---

[5]Plaintiffs identified the applicable trust as Certificateholders CWALT Inc., Alternative Loan Trust 2006-28CB, Mortgage Pass-Through Series 2006-28CB in the original petition, they identified the trust as Countrywide Alternative Loan Trust 2006-28CB in the amended complaint. Defendants contend that neither trust is a properly named defendant because lawsuits against a trust must be brought against the trustee as its legal representative. (doc. 25 at 8 fn. 2.)  They further contend that neither trust has been served.  (*Id*.)  Out of an abundance of caution and without waiving any objection to their capacity to be sued, however, their counsel is making a special appearance on behalf of both.  (*Id*.)

2006-28CB, referred to as Defendants).[6]  (docs. 22, 23.)

Plaintiffs contend that after the "closing date" of the loan on July 18, 2006, it appears that KBA sold the note to BNYM as trustee for the Trust.  (doc. 23 at 4.)  They assert that the Trust had a closing date of August 30, 2006, and therefore nothing can be transferred into it after that date. (*Id.*)  In addition to contending that MERS "allegedly" assigned the deed of trust to BNYM as trustee for the Trust on July 27, 2011, they allege that MERS again allegedly assigned the deed of trust to BNYM as trustee for the Trust on April 9, 2012.  (*Id.*)

Also, Plaintiffs "declare" a violation of Texas Local Gov't Code § 192.007(a) and a broken chain of title as to the loan at the time of the Assignment.  (*Id.*)  They "declare" that MERS did not have the authority to assign the deed of trust as nominee for KBA because KBA divested itself of its rights to the loan when it sold the note to BNYM.  (*Id.*)  According to Plaintiffs, the Assignment is fraudulent and void due to violation of § 192.007(a) and a broken chain of title as to the loan.  (*Id.* at 4-5.)  They further "declare" that BNYM, as trustee of the Trust, conducted a wrongful "trustee" sale on February 5, 2014[7];  that there was a knowing intent to defraud and "calculated maneuvers by Defendant" in order to deceive Plaintiffs; and that the sale of the Property was knowingly fraudulent.  (*Id.* at 5.)

On January 9, 2013, an appointment of substitute trustee was recorded by BNYM in the Official Public Records of Dallas County, Texas; and on January 11, 2013, Plaintiffs received a

---

[6]The amended complaint does not name "Does 1-X", so they are no longer defendants in the case.  *See Thompson v. Eason*, 258 F.Supp.2d 508, 510 (N.D.Tex. 2003); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)("An amended complaint supersedes the original complaint and renders it of no consequence unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

[7]Throughout the amended complaint, Plaintiffs list February 5, 2014 as the date of the foreclosure sale of the Property.  Both the notice of substitute trustee's sale and the substitute trustee's deed list the date of the sale as February 5, 2013.  (*See* doc. 23 at 115-117.)

notice of substitute trustee's sale.  (*Id*. at 5, 114-115.)  Plaintiffs "declare" that BNYM did not have authority to remove the trustee and appoint a substitute or schedule a sale because the Assignment is fraudulent and void.  (*Id*. at 5.)

They contend that after the February 5, 2014 sale, they made several attempts to notify BNYM and ReconTrust of the fraudulent and wrongful foreclosure of the Property "with a broken chain of title."  (*Id*.)  BNYM allegedly failed to provide them with "legally sufficient proof" that it was authorized to enforce the loan, and it instead relied on fraudulent documents to "achieve authorization to foreclose."  (*Id*. at 6.)

On February 19, 2013, ReconTrust recorded a substitute trustee's deed in the Official Public Records of Dallas, County, Texas.  (*Id*. at 6, 117.)  Plaintiffs contend that on March 24, 2014 and after, they sent KBA, BANA, and MERS a series of "Error Resolution and Information Request[s]" pursuant to the "Consumer Financial Protection Bureau Mortgage Servicing Regulations."  (*Id*. at 6.)  They "declare" that KBA, BANA, and MERS failed to show proof that they were legally entitled to payment for the loan; that ReconTrust and BNYM conducted a fraudulent and wrongful sale of the Property on February 5, 2014; and that the substitute trustee's deed is void.  (*Id*.)  They further "declare" that each of the Defendants could not show a proper chain of title to establish a right to foreclose under the Texas Property Code as mortgagee or mortgage servicer, and they did not have the ability to establish that the deed of trust was legally or properly acquired pursuant to Texas Local Government Code § 192.007(a).  (*Id*.)

The amended complaint expressly asserts claims for fraud, negligent misrepresentation, breach of contract, a claim that "no defendant had legal ownership of the Andrade note at the time of the February 5, 2014 Trustee Sale," a claim that "void assignments of interest due to a violation

6

of Texas Civil Practice and Remedies Code § 12.002(a)", and violation of "UCC § 3-501(b)(2)-Presentment." (*Id.* at 7-13.)  The amended complaint can also be liberally construed as asserting claims for violation of § 192.007(a) of the Texas Local Government Code and wrongful foreclosure. (*Id.* at 5-6, 8, 10, 12, 15.)  Plaintiffs seek declaratory judgment and compensatory and punitive damages.[8] (*Id.* at 13-16.)

On August 19, 2015, Defendants moved to strike the amended complaint, and they moved to dismiss Plaintiffs' claims against them for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (doc. 25.)

## II.  MOTION TO STRIKE

Defendants move to strike the amended complaint on the basis that Plaintiffs did not obtain written consent from all defendants or seek leave of court pursuant to Fed. R. Civ. P. 15 before filing their amended complaint.  (doc. 25 at 15-16.)

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course within 21 days of serving the pleading or being served with a responsive pleading or a motion under Rule 12(b), (e), or (f).  Otherwise, a party may amend only with leave of court or the opposing parties' consent. Fed. R. Civ. P. 15(a)(2).  Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs

---

[8]As noted, Plaintiffs' request in their original complaint for a declaration that the foreclosure sale was barred by the statute of limitations was recommended to be allowed to proceed to trial as to Plaintiffs individually. (doc. 18 at 26.)  However, Plaintiffs' amended complaint does not include this requested declaration, and it is therefore no longer before the Court. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  *Pro se* plaintiffs may also obtain leave to amend their complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.

Here, the Findings, Conclusions, and Recommendation (FCR) dated July 13, 2015, found that Plaintiffs had not alleged their best case with respect to the wrongful foreclosure claim and should be accorded an opportunity to amend their complaint to sufficiently state a claim for relief, as to them individually, against the moving defendants.  (doc. 18 at 24.)  It recommended that if Plaintiffs filed an amended complaint within the 14 days allowed for objections to the FCR, the defendants' motion to dismiss as to the wrongful foreclosure claim be denied.  On July 29, 2015, Plaintiffs were granted an extension of time to file an amended complaint until August 8, 2015. (doc. 22.)  Plaintiffs timely filed their amended complaint on August 5, 2015.  (doc. 23.)  Because they timely filed their amended complaint as allowed by the FCR, it was ordered that the action proceed on the amended complaint on September 1, 2015.

Defendants' motion to strike the amended complaint should be denied.

### III.  MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 25 at 16-31.)

### A.     <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs attached to their amended complaint copies of a special warranty deed

executed July 24, 2006, the note, the deed of trust, a chain of title analysis & mortgage fraud investigation, the Assignment, an assignment of deed of trust dated April 2, 2012, an appointment of substitute trustee, a notice of substitute trustee's sale, a substitute trustee's deed, and an affidavit of Joseph R. Esquivel Jr. in support of the chain of title analysis.  (*See* doc. 23 at 17-125.)  These documents are therefore considered part of the pleadings.  *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Defendants attached to their motion to dismiss copies of the note, the deed of trust, the Assignment, filings from Plaintiffs' bankruptcy action, and the bankruptcy trustee's July 27, 2015 letter to the Court.  (*See* doc. 25-2.)  Plaintiffs' amended complaint refers to the note, the deed of trust, and the Assignment, and therefore they are considered part of the pleadings.  The deed of trust and the Assignment are also a matter of public record, as are the bankruptcy filings and the trustee's letter to the Court, and they can be judicially noticed in considering a Rule 12(b)(6) motion.  *See* Fed. R. Evid. 201(b)(2)(a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments").  Because the documents attached to Defendants' motion to dismiss are part of the pleadings or subject to judicial notice, conversion of their motion into a motion for summary judgment is unnecessary.  *See Norris*, 500 F.3d at 461 n.9.

## B.  <u>The April 9, 2012 Assignment</u>

As Defendants note, the April 9, 2012 Assignment is not associated with the deed of trust that is the subject of this case.  (doc. 25 at 12-13.)  The April 3, 2012 assignment refers to a deed of trust that secures a loan in the amount of $35,578.00 and has a recorded instrument number of

200680276776.  (doc. 23 at 111.)  The deed of trust appears to be the second mortgage on the Property, which is identified in "Schedule D" of the bankruptcy petition.  (*See* doc. 25 at 46.)  The deed of trust associated with this suit secures a loan in the amount of $142,315.00 and has a recorded instrument number of 200600276775.  (doc. 23 at 22-23, 114-117; doc. 25-2 at 6-7.)

The claims in this case originate from the subject loan and deed of trust (*see* doc. 23 at19-38),  and Defendants' efforts to enforce certain rights pursuant to the subject loan and deed of trust. (*See* doc. 23.)  Because the April 9, 2012 is not associated with the subject loan and deed of trust, any claims based on the April 9, 2012 Assignment necessarily fail and should be dismissed.[9]

**C.**     **Standing**

Defendants argue that Plaintiffs lack standing to assert claims that arose prior to their bankruptcy case, including claims relating to the Assignment, due to their failure to schedule the claims in the bankruptcy action. (doc. 25 at 17-18.)  They argue that the claims for fraud, negligent misrepresentation, wrongful foreclosure, violation of Tex. Civ. Prac. & Rem. Code § 12.002(a), violation of § 192.007 of the Texas Local Government Code, and their claim that "no defendant had legal ownership of the Andrade note at the time of the February 5, 2014 Trustee Sale" are based on the Assignment and should therefore be dismissed due to lack of standing.  (*Id*. at 22-23, 25, 27-28, 30-31.)

---

[9]Although Defendants did not specifically move to dismiss the claims based on the April 9, 2012 Assignment, the court may sua sponte dismiss a claim as long as the plaintiff has notice of the court's intention and an opportunity to respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides the required notice and opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

### 1.      Real Party in Interest

"In bankruptcy proceedings, standing is limited to parties in interest." *In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citation omitted).  While the U.S. Bankruptcy Code does not define "party in interest", the Fifth Circuit has held that the term includes any creditor of the debtor "as well as any other person with a sufficient stake in [the] outcome of a [bankruptcy] proceeding so as to require representation." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C. V.*, 347 F.3d 589, 595 (5th Cir. 2003).  The debtor, "being insolvent," has no stake in the outcome of the bankruptcy proceeding because he "has no interest in the manner of distribution of the assets of the estate among his creditors." *Grain Co. v. Walker Grain Co.*, 285 F. 156, 157 (5th Cir. 1922) (citation omitted).

Section 541(a) of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property" become property of the bankruptcy estate at the commencement of the bankruptcy case.  11 U.S.C.A. § 541(a) (West 2010); *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997). Courts have uniformly held that "the definition of property of the estate [under § 541(a)] is to be interpreted broadly, and includes causes of action[10] existing at the time of the commencement of the bankruptcy action." *Drew v. Anderson*, 988 F.2d 1212, at *1 (5th Cir. 1993) (per curiam) (unpublished) (discussing the legislative history of § 541(a) and collecting cases); *In re Swift*, 198 B.R. 927, 930 (Bankr. W.D. Tex. 1996) ("It is settled law that the term 'all legal and equitable interests of the debtor in property' includes causes of action which have accrued as of the commencement of the case."). Notably, courts have also held that "[c]auses of action need not be

---

[10]   A "cause of action" "is an asset or a property right ... to which [a person] [is] entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him." *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 867 (5th Cir. 1971).

formally filed prior to the commencement of a bankruptcy case to become property of the bankruptcy estate." *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992), *aff'd sub nom. Lawrence v. Jackson Mack Sales*, 42 F.3d 642 (5th Cir. 1994) (collecting cases).

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished", and the appointed bankruptcy trustee becomes "the representative of the bankruptcy estate." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). As such, the trustee becomes "the real party in interest,[11] and the only party with standing to prosecute causes of action belonging to the estate." *Vineyard v. BAC Home Loan Servicing, LP*, No. A-10-CV-842-LY, 2011 WL 8363481, at *4 (W.D. Tex. Dec. 28, 2011) (citing *Kane*, 535 F.3d at 385 and 11 U.S.C. §§ 323, 541(a)(1)). Unless a cause of action is either "abandoned"[12] by the trustee "or administered in accordance with the Code," it remains property of the bankruptcy estate and "the debtor has no standing to pursue [it]," even after her debts are discharged and her case is closed. *See Drew*, 988 F.2d at *2; *see also* 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned ... and that is not administered in the case remains property of the estate.").

---

[11] Fed. R. Civ. P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Hatherly v. Mid-Continent Cas. Co.*, No. CIV.A. C-05-583, 2006 WL 1897266, at *2 (S.D. Tex. July 10, 2006) (citing *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)). Accordingly, the claim that a debtor lacks standing to sue in this context presents the question of whether her "claims are being prosecuted by a party other than the real party in interest pursuant to" Rule 17(a). *Bath v. HSBC*, No. 12-CV-01929-RBJ-KMT, 2013 WL 3296613, at *1 (D. Colo. May 30, 2013); *accord Transload & Transp., Inc. v. Am. Marine Underwriters, Inc.*, 94 B.R. 416, 419 (E.D. La. 1988) (explaining that because the debtor's "cause of action" "became part of the debtor's estate when [the] bankruptcy proceedings were filed," the bankruptcy trustee was the "only real party in interest" and "the proper party plaintiff to bring suit [t]herein" under Rule 17(a)).

[12] "[U]pon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate .... Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane*, 535 F.3d at 385. This requires affirmative action or "a clear manifestation of the trustee to abandon the claim." *Dallas Cabana, Inc.*, 441 F.2d at 867–68; *see also* 11 U.S.C. § 554(a) (requiring "[a] notice and a hearing" for the trustee to "abandon any property of the estate"). Abandonment may even require an order "or some other disposition" by the bankruptcy court. *See Dallas Cabana, Inc.*, 441 F.2d at 868.

In this case, Plaintiffs filed their Chapter 7 voluntary bankruptcy petition on February 28, 2012. (doc. 25-2 at 28.)  As of that date, the Property (the only  "real property" in which they had an ownership interest listed on their Schedule A) became property of the bankruptcy estate, and all of their rights in it were extinguished.  *See Kane*, 535 F.3d at 385; *see also* 11 U.S.C. § 541(a). According to Plaintiffs' amended complaint, the following claims against Defendants in this case arise from the Assignment: fraud, negligent misrepresentation, wrongful foreclosure, violation of Tex. Civ. Prac. & Rem. Code § 12.002(a), and claims for violation of Section 192.007 of the Texas Local Government Code and that "no defendant had legal ownership of the Andrade note at the time of the February 5, 2014 Trustee Sale" (the Assignment Claims).  (*See* doc. 23 at 5-9, 10-12.) Because the Assignment claims "accrued" before February 28, 2012, they also became property of the bankruptcy estate as of that date, even though Plaintiffs had not yet filed this action.[13]  *See* 11 U.S.C. § 541(a); *Swift*, 198 B.R. at 930; *Lawrence*, 837 F. Supp. at 779.  Plaintiffs have failed to allege or bring forth facts showing that the bankruptcy trustee had abandoned such claims, so they fail to raise a reasonable inference that they are the real party in interest and have standing to pursue them.  *See Vineyard*, 2011 WL 8363481, at *5 (holding that the debtor's claims against the mortgagee arising from a foreclosure "fail[ed] as a matter of law" because they "belong[ed] to the bankruptcy estate, not [him]," and "[u]nless and until the trustee formally abandon[ed]" the claims, the trustee was "the proper party to prosecute [them]"); *see also Drew*, 988 F.2d at *2 (to same effect).[14]

---

[13]Plaintiffs' lack of standing is not affected by the bankruptcy court's May 31, 2013 order discharging their debts and closing their case because the claims remained part of the bankruptcy estate.  *See* 11 U.S.C. § 554(d); *see also Drew*, 988 F.2d at *2.

[14]Notably, on September 1, 2015, all claims based on the Assignment, as they relate to Plaintiffs, individually, were dismissed with prejudice for failure to state a claim upon which relief can be granted.  (*See* doc. 28.)

### 2.      Joinder/Substitution

Where "a court concludes that a debtor lacks standing to pursue claims in an action because he is not a real party in interest, the court may allow the bankruptcy trustee to be joined or substituted as [the] plaintiff" before dismissing the action.  *See Hatherly*, 2006 WL 1897266, at *2. Under Rule 17(a)(3), a court may not dismiss an action "for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. Rule Civ. P. 17(a)(3).  Accordingly, a bankruptcy trustee should be allowed a reasonable time to ratify, join, be substituted, or take other action with respect to the Assignment Claims.  *See id.*; *see also Bauer v. Dean Morris, L.L.P.*, No. CIV.A. 08-5013, 2011 WL 1303814, at *6 (E.D. La. Mar. 30, 2011) (allowing the bankruptcy trustee time "to determine whether to move to substitute himself in place of [the plaintiff] as the plaintiff in [the] matter" before dismissing the plaintiff's claims on lack of standing grounds).  Here, the bankruptcy trustee has already filed a notice stating that he does not wish to intervene in this action as allowed by Fed. R. Civ. P. 17(a)(3).  (doc. 21.)  Accordingly, the Assignment Claims should be dismissed.  (doc. 28.)

### D.      Judicial Estoppel

Defendants also move to dismiss Plaintiffs' claims based on the execution of the note and deed of trust and the challenges to the Assignment on grounds that they are judicially estopped from asserting them because they failed to disclose them in their bankruptcy filings.  (doc. 25 at 18-20.)

"Judicial estoppel is an affirmative defense."  *Abreu v. Zale Corp.*, No. 3:12-CV-2620-D, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (Fitzwater, C.J.) (citations omitted).  Although affirmative defenses are generally not appropriate grounds on which to dismiss a claim under a Rule

12(b)(6) motion, the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). Here, because the elements of judicial estoppel appear on the face of Plaintiffs' amended complaint and in court filings that are subject to judicial notice, this affirmative defense may be properly considered for purposes of Defendants' motion to dismiss. *See id.*; *see also Abreu*, 2013 WL 1949845, at *1 (considering judicial estoppel in the context of a motion for judgment on the pleadings under Rule 12(c), which utilizes the same standard "as the one for deciding a motion to dismiss under Rule 12(b)(6)"). As with any affirmative defense, "[t]he burden to prove judicial estoppel is on the party invoking the doctrine." *See Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 WL 7089989, at *2 (S.D. Miss. May 31, 2006) (citing *Smith v. United States*, 328 F.3d 760, 765 (5th Cir. 2003)).

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc) (citation omitted). Its purpose "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Kane*, 535 F.3d at 385 (citation and internal quotation marks omitted). The doctrine "applies when (1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently." *Abreu*, 2013 WL 1949845, at *2; *accord Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

### 1.     Inconsistent Positions

In relation to the first element, "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999)) (emphasis in *Coastal Plains*); *see also* 11 U.S.C. § 521(a)(1).  The duty to disclose continues even after the debtor is discharged and her bankruptcy case is closed.  *See Superior Crewboats*, 374 F.3d at 335; *see also* 11 U.S.C. § 350(b) (providing for a "case [to] be reopened ... to administer assets, to accord relief to the debtor, or for other cause").  "By omitting a claim or potential claim from the applicable bankruptcy schedule(s), a debtor represents to the bankruptcy court that the claim does not exist."  *Thompson*, 2006 WL 7089989, at *3 (citation omitted).  Accordingly, "if a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then element one of the test for judicial estoppel is met."  *Id.*

Here, judicially noticed public records reflect that Plaintiffs listed cash, bank accounts, household goods, books, pictures, "knick-knacks", clothing, jewelry, sports and photographic equipment, life insurance, a retirement and pension plan, and motor vehicles as their personal property in their Schedule B.  (*See* doc. 25-2 at 38-42.)  Although their claims based on the Assignment accrued before they filed for bankruptcy, they did not list them in their Schedule B, as they were required to do by 11 U.S.C. § 521(a)(1).  (*Id.*)  Instead, they indicated that they had no personal property under the category of "contingent and unliquidated claims." (*See id.* at 41.)  With their nondisclosure, they informed the bankruptcy court that they had no pending or potential claims. *See Thompson*, 2006 WL 7089989, at *3.  Because their claims concerning the Assignment are

18

"plainly inconsistent" with their position in their Schedule B, the first element of judicial estoppel is satisfied. *See, e.g.*, *Abreu*, 2013 WL 1949845, at *2 (holding that the plaintiff's failure to list her claim against her former employer for "unpaid overtime" in her schedule B was "plainly inconsistent" with her subsequent action involving that claim).

### 2. The Bankruptcy Court's Adoption of Plaintiffs' Previous Position

As for the second element of judicial estoppel, the Fifth Circuit has explained that "[a]doption does not require a formal judgment"; rather, it requires only that the first court "adopt[] the position urged by the party, either as a preliminary matter or as part of a final disposition." *Superior Crewboats*, 374 F.3d at 335 (quotation omitted). Consequently, courts have held that a bankruptcy court adopts a debtor's position when it issues a discharge under Section 727 of Title 11 of the United States Bankruptcy Code. *See Acuna v. Connecticut General Life Ins. Co.*, 560 F. Supp.2d 548, 554 (E.D. Tex. 2008)("The Bankruptcy Court adopted the Plaintiff's position by issuing its discharge."); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) ("[A] discharge of debt by a bankruptcy court...is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated."); *see also Superior Crewboats*, 374 F.3d at 335; *Bauer v. Dean Morris, L.L.P.,* No. CIV.A. 08-5013, 2011 WL 1303814, at *5 (E.D.La Mar. 30, 2011)("Implicit in the [bankruptcy court's] order that unsecured creditors would be paid nothing [was] the bankruptcy judge's acceptance of [the] plaintiff's representations in the bankruptcy schedules ... that she had no contingent assets.").

Here, the second element is satisfied because the bankruptcy court's discharge of Plaintiffs was "sufficient acceptance to provide a basis of judicial estoppel." *See Hamilton*, 270 F.3d at 784.

### 3.      *Plaintiffs' Inadvertence*

As to the third element, the Fifth Circuit has held that in "bankruptcy cases, the debtor's failure to satisfy [her] statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Coastal Plains*, 179 F.3d at 210).

### a.      Plaintiffs' Knowledge of Their Claims

"A plaintiff has knowledge of a claim whenever she knows the facts that give rise to the claim." *Abreu*, 2013 WL 1949845, at *3 (citing *Jethroe*, 412 F.3d at 601). Notably, the debtor's "awareness of [her] statutory disclosure duty is ... not relevant to the question of judicial estoppel"; all that matters is her awareness "of the facts giving rise to her claim." *Kamont v. West*, 83 Fed. App'x 1, 3 (5th Cir. 2003) (per curiam). Neither does the "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to [the bankruptcy court's] confirmation to suggest that [she] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Thompson*, 2006 WL 7089989, at *3 (citations omitted).

Here, Plaintiffs allege that the Assignment was invalid and void because it occurred after the closing date of the Trust and because it was not recorded pursuant to Tex. Local Gov't Code § 192.007(a). (doc. 23 at 4-5, 10, 12, 15.) As the Assignment occurred and was filed in July of 2011, Plaintiffs were aware of the facts giving rise to their claims before they filed for bankruptcy on February 28, 2012. They had "knowledge" of their claims before that date for purposes of judicial estoppel. *See Superior Crewboats*, 374 F.3d at 335; *Kamont*, 83 F. App'x at 3.

Even assuming for purposes of Defendants' motion that Plaintiffs did not know about the

Assignment Claims until after the bankruptcy closed, they could have fulfilled their on-going obligation to disclose their pending claims by seeking to re-open their bankruptcy case and amending their Schedule B. *See Abreu*, 2013 WL 1949845, at *3 (explaining that the plaintiff "undoubtedly had knowledge of [her] claim after she filed [her] suit, yet she failed to amend her bankruptcy plan, despite [her] ongoing obligation to do so"); *see also* 11 U.S.C. §§ 350(b)11, 521(a)(1). They do not allege, and the public records do not reflect, that they sought to re-open the bankruptcy case. The "knowledge" sub-element of the "inadvertence" test is therefore satisfied.

> b.   Plaintiffs' Motive to Conceal Their Claims

The Fifth Circuit has stated that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of [the] potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262 (quoting with approval *Thompson*, 2006 WL 7089989, at *4). In *Love*, the Fifth Circuit noted that "whether a debtor's failure to disclose claims was inadvertent presents a question of fact." Citing *Superior Crewboats*, it reaffirmed its finding "that [the] debtors had a motivation to conceal" their claims because "they stood to 'reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.'" *Id.* (citing *Superior Crewboats*, 374 F.3d at 336).

In *Superior Crewboats*, the plaintiffs filed a personal injury suit against a maritime company "while their bankruptcy case was still pending." *Superior Crewboats*, 374 F.3d at 333. They informed the bankruptcy trustee about their claim but incorrectly stated that it was barred by the statute of limitations; the trustee abandoned the claim as a consequence. *Id.* Although the plaintiffs later sought to "re-open the bankruptcy proceeding and amend their petition" to account for the actually viable claim, the Fifth Circuit denied leave after finding that they had the "requisite

motivation to conceal the claim" at the time they filed their lawsuit.  *Id.* at 335–36.  The Fifth Circuit reversed the district court's denial of the maritime company's motion to dismiss, holding "that judicial estoppel bar[red] the [plaintiffs'] personal injury suit as a matter of law."  *Id.* at 336.

Noting the apparent tension between *Love*, which involved a summary judgment motion, and *Superior Crewboats,* which was decided in the context of Rule 12(b)(6), the Fifth Circuit explained in *Abreu* that "[i]f inadvertence is a fact issue, it is unclear how *Superior Crewboats* could have reversed the district court's denial of a Rule 12(b)(6) motion based on judicial estoppel in the absence of the plaintiff[s'] pleadings or judicially-noticed documents that clearly showed [their] subjective intent."  *Abreu*, 2013 WL 1949845, at *5.  Relying on *Superior Crewboats*, and noting that "it controls over *Love* to the extent they are inconsistent,"[15] the Fifth Circuit held that the defendant employer "ha[d] established the [motive] [sub-element] of judicial estoppel" "based on [the plaintiff's] complaint and documents that the court [could] judicially notice" because the plaintiff "would have reaped a windfall had she been able to recover on her claim without disclosing it to the bankruptcy court."  *Id.* at *4–5.  Also relying on *Superior Crewboats*, the Fifth Circuit likewise held in *Thompson* that the defendant had established the plaintiff's "motive to conceal" sub-element for purposes of its motion to dismiss because the plaintiff "clearly would have benefitted from omitting [his] discrimination claim from [his] Schedule B" by "receiv[ing] the fruits of [the] claim" at the expense of his creditors.  *Thompson*, 2006 WL 7089989, at *5–6.

Here, the bankruptcy court discharged Plaintiffs' debts.  (doc. 25-2 at 87.)  Part of the relief they now seek are declarations that none of the defendants in the case have a lawful claim to the note

---

[15] In the Fifth Circuit, if "two panel decisions are in conflict, the earlier opinion controls."  *Abreu*, 2013 WL 1949845, at *5 n. 3 (citing *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009); *see also In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991) (explaining that "[i]n this Circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court").

or deed of trust.  (doc. 23 at 15.)  They would "reap a windfall" if they prevailed in their suit and obtained relief without having accounted for it in their bankruptcy case.  Accordingly, Defendants have established the "motive to conceal" sub-element of the inadvertence test based on Plaintiffs' own pleadings and the filings attached to their motion to dismiss.  *See Abreu*, 2013 WL 1949845, at *5; *Thompson*, 2006 WL 7089989, at *5–6.

In conclusion, Defendants have met their burden to establish the affirmative defense of judicial estoppel.  Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" "to protect the integrity of the judicial process."  *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  "Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice," and its application "should be guided by a sense of fairness, with the facts of the particular dispute in mind."  *Abreu*, 2013 WL 1949845, at *5 (citing *Reed,* 650 F.3d at 574).  Its application " is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600; *Kane*, 535 F.3d at 386.  The doctrine "must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate."  *Reed*, 650 F.3d at 574.  Allowing plaintiffs to proceed with previously undisclosed claims would produce the inequitable result of permitting "debtors to '[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights.'" *Superior Crewboats*, 374 F.3d at 336 (quoting *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)) (alterations in *Superior Crewboats*).  This would be the result in this case if Plaintiffs were to recover against Defendants

at the expense of their creditors whose claims were discharged in their bankruptcy action. Accordingly, Defendants' motion to dismiss should be granted as to the Assignment Claims, and those claims should be dismissed for failure to state a claim to the extent they are based on the Assignment.[16]

## E.      "Show-me-the-note" Theory

Defendants argue that Plaintiffs' allegations that BNYM failed to show physical possession of the note at the time of foreclosure and that none of the defendants proved they had physical possession of the note which would allow them to foreclose, are based on the "show-me-the-note" theory.  (doc. 25 at 20.)  They contend that because such a theory has been rejected by the Fifth Circuit, Plaintiffs' claim for negligent misrepresentation, their claim that "no defendant had legal ownership of the Andrade Note at the time of the February 5, 2014 sale," and their claim for "violation of UCC § 3-501 - Presentment", all of which are based on the theory, should be dismissed with prejudice.  (*Id*.)

Plaintiffs' allegations that Defendants failed to show physical possession of the note before foreclosing on the Property implicates the "show-me-the-note" theory.  *See Carrie v. Chase Home Finance*, No. 3:12-cv-852-G, 2013 WL 704943, at *4 (N.D.Tex. Feb.1, 2013)*, rec. adopted,* 2013 WL 705865 (N.D.Tex. Feb. 27, 2013).   "Advocates of this theory believe that only the holder of

---

[16]Defendants also move to dismiss Plaintiffs' fraud claim on the grounds that it is barred by the economic loss doctrine and because Plaintiffs do not meet the elements required to state a fraud claim under Texas law.  (doc. 25 at 22-23.)  They also move to dismiss the claim for violation of Tex. Civ. Prac. & Rem. Code § 12.002(a) on the basis that Plaintiffs do not have standing to bring claims based on challenges to the Assignment.  (*Id*. at 28.)  Additionally, Defendants move to dismiss Plaintiffs' claim for violation of Tex. Local Gov't Code § 192.007 on the additional basis that Section 192.007 does not require an assignment to be recorded in order to be enforceable.  (*Id*. at 30.)  Finally, they move to dismiss Plaintiffs' claims based on the alleged invalidity of the Assignment on the basis that they do not have standing to challenge the validity of the Assignment because they are not parties to it. (*Id*. at 21.)  Because the claims are otherwise subject to dismissal, it is unnecessary to reach these arguments.

the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted).  This theory has been widely rejected by courts in Texas.  *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254–55 (5th Cir. 2013).  "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*,  No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).

Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug.30, 2012, no pet.) (mem.op.) (to same effect).  When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).[17]  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.  Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien."  Tex. Prop. Code Ann. § 51.002 (West 2007).

Courts have held that where MERS, a "book entry system", is the "mortgagee" and "is given the power of sale under the deed of trust, then it has the power of sale." *Willeford v. Wells Fargo*

---

[17]  The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status. *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

*Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012).[18]  "MERS also has the authority to transfer the power of sale *by assigning the deed of trust*." *Id.* (emphasis added); *accord Enis*, 2012 WL 4741073, at *2 ("Because under the deed of trust MERS held the power of sale, BOA received that power when it was assigned the deed of trust.").  Moreover, courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other because they "must be read . . . and construed together as a single instrument."  *Warren v. Bank of Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec.adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc.v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal quotations omitted); *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) (same) (listing cases).

Here, MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust.  *See* Tex. Prop. Code Ann. § 51.0001(4)(A)–(B); (*see also* doc. 23 at 22-24).  When it assigned the deed of trust, BNYM and its successors and assigns became the new mortgagee(s) and acquired all of MERS's rights.  *See* Tex. Prop. Code  § 51.0001(4)(A),(C). As the new mortgagee(s), BNYM and its successors and assigns had all of the rights that Plaintiffs granted the lender under the deed of trust, including the power of sale on default.  *See id.*; (*see also* (doc. 23 at 24; doc. 25-2 at 8.)  BNYM and its assigns could exercise that right without having to

---

[18]A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).

produce the original promissory note.  *See Martins*, 722 F.3d at 255; *Asonibe v. Flagstar Bank, FSB*,

No. 3:12-CV-2113-M BH, 2013 WL 1828842, at *6 (N.D. Tex. Apr. 5, 2013), *rec. adopted*, 2013

WL 1831747 (N.D. Tex. Apr. 30, 2013) ("As the new mortgagee, Defendant could foreclose on the

Property upon Plaintiffs' default without having to produce the note or deed of trust.").

Plaintiffs' allegation that BNYM could not foreclose because it did not own or hold the note

is likewise unavailing.  *See Martins*, 722 F.3d at 255.  To the extent Plaintiffs' claims for negligent

misrepresentation, their claim that "no defendant had legal ownership of the Andrade Note at the

time of the February 5, 2014 sale," and their claim for "violation of UCC § 3-501 - Presentment"

are based on their "show-me-the-note" theory, the claims are subject to dismissal for failure to state

a claim.[19]

## F.    **Breach of Contract**

Defendants argue that Plaintiffs' claim for breach of contract fails as a matter of law because

they do not and cannot satisfy the elements required to state a cognizable claim for relief.  (doc. 25

at 26.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid

contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by

the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach.  *Mullins*

*v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450

(Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

---

[19]Defendants also move to dismiss Plaintiffs' negligent misrepresentation claim on the basis that it is barred by the economic loss doctrine.  (doc. 25 at 22.)  They also move to dismiss Plaintiffs' claim for "violation of UCC § 3-501 - Presentment" on the basis that the UCC does not govern foreclosure actions related to liens on real property. (*Id*. at 25 at 29.)  Because these claims are otherwise subject to dismissal, it is unnecessary to reach these arguments.

Plaintiffs allege that KBA breached the contract when it improperly sold the note to BNYM as trustee for the Trust before the Trust's closing date and then failed to release the deed of trust as required by paragraph 23 of the deed of trust.  (doc. 23 at 10.)  They alternatively allege that KBA failed to timely record a valid assignment to BNYM per Tex. Local Gov't Code § 192.007.  (*Id.*)  They contend that KBA's breach caused them injury because they do not have marketable title to the Property.  (*Id.*)

Here, paragraph 23 of the deed of trust states that the Lender shall provide the borrower with a release of the deed of trust only upon payment of all the sums secured by the deed of trust.  (doc. 23 at 33; doc. 25-2 at 17.)  Plaintiffs have not alleged that they have paid all the amounts due on the loan.  In fact, they admit their failure to pay all amounts due under the loan in listing the loan on Schedule A of their bankruptcy petition and in listing the Property on their statement of intention to surrender property.  (*See* doc. 25 at 37, 67)  They cannot, therefore, establish a breach of paragraph 23 of the deed of trust.  *See Conrad v. SIB Mortg. Corp.*, No. 4:14-cv-915-A, 2015 WL 1026159, at *5 (N.D.Tex. Mar. 6, 2015)(finding the amended complaint failed to state a claim for breach of contract against the defendant under a similar release provision in the deed of trust where the plaintiffs failed to allege that they paid all sums due under the note); *Rice v. JP Morgan Chase Bank, Nat. Ass'n*, No. H-15-0416, 2015 WL 4112287, at *3 (S.D.Tex. July 7, 2015);  *Short v. JPMorgan Chase Bank, N.A.*, No. 3:15-cv-1953-M, 2015 WL 8732206, at *6 (N.D.Tex. Nov. 19, 2015), *rec. adopted*, 2015 WL 8612260 (N.D.Tex. Dec. 14, 2015).  Defendants' motion to dismiss this claim should be granted.

## G.    <u>Wrongful Foreclosure</u>

Defendants move to dismiss Plaintiffs' wrongful foreclosure claim because Plaintiffs do not

28

allege any facts relating to a defect in the foreclosure sale proceedings, a grossly inadequate sales price, or a causal connection between the alleged defect and the alleged grossly inadequate sales price aside from their challenges to BNYM's standing to foreclose based on the Assignment. (doc. 25 at 30-31.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, Plaintiffs allege that ReconTrust and BNYM conducted a wrongful trustee sale on February 14, 2014. (doc. 23 at 5-6.) They contend that BNYM did not have authority to appoint a

substitute tustee or record a notice of trustee sale because the assignments it bases its claim on are fraudulent and void.  (*Id.* at 5.)   As with their original petition, it appears that their allegations regarding the foreclosure are based on their Assignment allegations.  If so, those allegations have been dismissed due to their failure to assert them in the bankruptcy proceeding.   However, to the extent they are not based on the allegations regarding the Assignment, they fail because Plaintiffs fail to allege that the Property was sold for a grossly inadequate price, or that there was a causal connection between any defects in the foreclosure sale proceedings and any grossly inadequate selling price.  Therefore, to the extent they intend to bring a wrongful foreclosure claim that is not based on the Assignment, it should be dismissed for failure to state a claim.  *Pollet v. Aurora Loan Servs.,* 455 Fed. App'x 413, 415 (5th Cir. 2011)(affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege (1) that his home sold for a grossly inadequate selling price and (2) a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price"); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d at 766; *Garcia v. Bank of New York Mellon*, No. 3:12-cv-0062-D, 2012 WL 692099, at *2 (N.D.Tex. Mar. 5, 2012).[20]

## IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

---

[20]In their response to Defendants' motion to dismiss, Plaintiffs state that Defendants' argument that their claims for fraud and negligent misrepresentation are barred by the economic loss doctrine fails because they are seeking to recover for fraudulent inducement.  (doc. 29 at 14.)  Plaintiffs made no allegations regarding fraudulent inducement in their amended complaint.  (See doc. 23.)  Even if liberally construed as an amendment to their amended complaint, Plaintiffs' claim for fraudulent inducement fails to state a claim for relief.  Because it appears it is based on the same allegations as the asserted negligent misrepresentation and fraud claims, it is also based on the Assignment and the "show-me-the-note" theory.  As noted, any claims based on the Assignment belong to the bankruptcy estate, and the "show-me-the-note" theory is invalid.  Therefore, to the extent a claim for fraudulent inducement is being asserted in their response, it is also subject to dismissal for failure to state a claim.

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D,

2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal.  *See*

*Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex.

Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an

action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to

a motion to dismiss after being specifically invited to do so by the court, the defendant has

specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the

complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is

also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*,

188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs were granted leave to file an amended complaint after dismissal of all their

claims against Defendants, except for one.  (*See* doc.18.)  Their amended complaint, which largely

duplicates their original petition, fails to state a viable claim against Defendants.  It therefore appears

that Plaintiffs have alleged their best case, and no further opportunity to amend is warranted.

## V.  RECOMMENDATION

Defendants' motion to strike should be **DENIED**, their motion to dismiss should be

**GRANTED**, and all of Plaintiffs' claims against the Defendants should be dismissed with prejudice.

**SO RECOMMENDED** on this 22nd day of February, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE